UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JACOB P., | Case No. 19-cv-3078-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

    This case is an appeal from the denial of Jacob P.'s application for Social Security disability benefits and is before the Court on the parties' cross-motions for summary judgment. [Pl.'s Mot., ECF No. 17; Def.'s Mot., ECF No. 20]. Mr. P. argues that the Administrative Law Judge ("ALJ") erred by (1) failing to include or provide an explanation for excluding a restriction on "detailed tasks and instructions" in the residual functioning capacity (RFC) that was observed by psychological consultants; (2) failing to follow the procedural requirements of Social Security Ruling 13-2p; and (3) failing to fully and fairly develop the record. Having reviewed the record and the parties' arguments, the Court concludes that the RFC was supported by substantial evidence in the record and that the ALJ properly adhered to procedural requirements and fully developed the record. Accordingly, Mr. P.'s motion for summary judgment is denied, the Commissioner's summary-judgment motion is granted, and this action is dismissed.

## I.    Background

    Mr. P. was 21 years old on the alleged onset date of his disability and has prior employment experience as a security guard. He argues that he had become unable to work due to his type 1 diabetes, mood swings due to blood sugar fluctuation, depression, anxiety, and a personality disorder. [R. 344, 351]. Mr. P. asserts that, due to his mental and physical health conditions, he is generally incapable of proper physical and emotional functioning as required to hold a job. Specifically, he asserts that he is limited in his ability to do household chores or yard work; has trouble sleeping and getting along with others, including bosses and police; has periodic trouble walking; and has issues with memory, concentration, completing tasks, and following instructions. [R. 345–51]. However, he can shop for food and clothing, manage money, and engage in some social activities.

On May 8, 2017, Mr. P. applied for Title XVI supplemental security income; he then submitted applications for child's insurance benefits and Title II disability insurance benefits on May 17, 2017. His applications were denied initially and upon reconsideration, and he requested a hearing. ALJ Joseph Doyle held a video hearing on April 26, 2019, and on May 30, 2019, issued a decision concluding that Mr. P. was not disabled under the Social Security Act. [R. 11–26].

The ALJ found that Mr. P. had several severe impairments: diabetes mellitus with a history of diabetic ketoacidosis; depressive disorder; anxiety disorder; and personality disorder. [R. 14]. But the ALJ found that none of these impairments, alone or in combination, meets or medically equals the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined Mr. P.'s residual functional capacity (RFC). [R. 17]. The RFC comprises the mental and physical work-related activities that a claimant can do when the limitations caused by all impairments are taken into account. *See* 20 C.F.R. § 404.1545 (a)(1) (stating that the "residual functional capacity is the most [a claimant] can do despite his limitations").

The ALJ next concluded that, based on the RFC, Mr. P. could not perform his past relevant work as a security guard. [R. 24]. However, the ALJ determined that there are a significant number of jobs in the national economy that a person with Mr. P.'s RFC could perform, including Laundry Worker, Price Marker, and Garment Sorter. [R. 25–26]. Accordingly, the ALJ concluded that Mr. P. was not disabled. [R. 26].

Mr. P. appealed the ALJ's decision, but review was denied by the Social Security Appeals Council. This lawsuit followed.

## II.     Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, . . . the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (citations omitted).

The substantial-evidence standard is a deferential one. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Under this standard, courts should not reverse the Commissioner's findings merely because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

2

Instead, a court will reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## III. Analysis

### A. The RFC Finding and the Expert Opinions

Mr. P. first asserts that ALJ Doyle erred in his RFC findings by failing to include a limitation expressed in the findings of two state agency psychological consultants. After consideration of those opinions and the record as a whole, as well as a careful review of the challenged RFC, the Court disagrees.

In September of 2017, non-examining agency psychological consultant P.E. Shields, Ph.D., opined that Mr. P.'s mental illnesses subjected him to the following limitations:

> The claimant retains the capacity to concentrate on, understand, and remember routine, repetitive instructions, but would have moderate to marked problems with both detailed and complex instructions. The claimant's ability to carry out tasks with adequate persistence and pace would be moderately impaired but adequate for routine, repetitive tasks, but not for detailed or complex tasks. The claimant's ability to interact and get along with co-workers would be moderately impaired, but adequate for brief and superficial contact. The claimant's ability to interact with the public would be moderately impaired, but adequate for brief and superficial contact. The claimant's ability to accept supervision would not be significantly impaired. The claimant's ability to sustain an ordinary routine without special supervision is not significantly impaired. The claimant's ability to handle stress would be moderately impaired but adequate to tolerate the routine stressors of a routine, repetitive work setting.

[R. 92–93]. On reconsideration of Mr. P.'s claim, non-examining agency psychological consultant Mary Sullivan, Ph.D., affirmed Dr. Shields' assessment with little comment. [R. 152].

The ALJ also considered an assessment provided by Craig Barron, Ph.D.—a psychological consult who examined Mr. P. once in August of 2017. [R. 22, 2573–77]. Dr. Barron opined that Mr. P. "is capable of communicating, comprehending, and retaining simple directions at an unskilled, competitive employment," and "capable of withstanding work-related stresses, attending work regularly, rapidly performing routine repetitive

3

activities on a sustained basis, and meeting production requirements, or relating to others in an unskilled, competitive employment level as long as he maintains sobriety." [R. 2576–77].

ALJ Doyle found all three of these psychological assessments "to be generally supported by, and consistent with, the evidence of record, and therefore found them to be persuasive." [R. 22]. ALJ Doyle then elaborated,

> their assessments limiting the claimant to generally unskilled work with diminished social interaction and reduced stress are supported given the claimant's longstanding mental health issues with diminished mood, irritability, and poor focus. As discussed above, the claimant presented with generally intact mental status examinations at times during the period of alleged disability, but his providers and examiners noted difficulties with mood changes, anxiety, and irritability.

[R. 22]. Based on these three psychological assessments and the voluminous medical record, the ALJ concluded that the following statement adequately accounts for Mr. P.'s remaining functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: the claimant is limited to never climbing ladders, ropes, or scaffolds, and only occasional climbing of ramps or stairs. Additionally, he is limited to never having exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights. The claimant is limited to the performance of simple, routine, and repetitive tasks, as well as work in a low-stress job, defined as one having only occasional decision-making and occasional changes in the work setting. Finally, the claimant is limited to only occasional interactions with the public and coworkers.

[R. 17, 24].

Mr. P. argues that, because the assessments of Drs. Shields and Sullivan stated that he "would have moderate to marked problems with both detailed and complex instructions" and that he was not adequately able to carry out "detailed or complex tasks," the ALJ should have included an explicit limitation on "detailed tasks" in the RFC or an explanation as to why he did not include such a limitation. If the RFC properly included a restriction on "detailed tasks," Mr. P.'s argument continues, he would be unable to perform jobs with a DOT-assigned reasoning level of two, because those require an ability to "apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Therefore, because ALJ Doyle included the availability of jobs with level-two reasoning, he erroneously concluded

4

that there were adequate jobs in the national economy that Mr. P. could hold. Remand is necessary, Mr. P. concludes, for the ALJ to amend the RFC and reevaluate the availability of jobs in the national economy.

The Court is unpersuaded as to the foundational assertion of Mr. P.'s argument: that the RFC had to include a limitation on detailed tasks, given the medical opinions which the ALJ found persuasive. Mr. P. relies on *Gann v. Berryhill* to support his position. 864 F.3d 947 (8th Cir. 2017). In *Gann*, the ALJ found credible and gave "significant weight" to the assessments of two medical professionals. One of these opinions provided that the claimant's "ability to adapt to a work environment appears to be *highly marginal*," and the other "noted 'adaptive limitations' and an 'ability to respond appropriately to changes in the work setting' that is 'moderately limited.'" *Id.* at 950 (emphasis in original). The ALJ did not include in the claimant's RFC any adaptive limitations, and the Eighth Circuit held that the RFC "did not contain all impairments supported by substantial evidence in the record." *Id.* at 953. The court remanded the matter to the Commissioner in part because the ALJ failed to address or include a limitation in the RFC that was supported by two sources to whom the ALJ afforded "significant weight." *Id.* at 953.

The Court finds Mr. P's case to be readily distinguishable from the record on review in *Gann*. Here, there is no indication that ALJ afforded the assessments of Dr. Shields and Dr. Sullivan controlling, "significant," or any other heightened evidentiary weight. Indeed, the ALJ specifically stated that, "[a]s for medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinions, including those from the claimant's medical sources." [R. 21]. It is well established that when reviewing a decision by the Commissioner to deny a claimant Social Security benefits, the court's ultimate inquiry is whether that decision was supported by substantial evidence in the record. *Bradley*, 528 F.3d at 1115. The issue in *Gann* was the apparent evidentiary contradiction between an ALJ stating that a particular source was especially pertinent to its decision, yet entirely ignoring critical information that that source provided. There is no such issue here, as there is no indication that the ALJ gave the opinions of Drs. Shields and Sullivan significant weight.

Mr. P. argues that the mere facts that the ALJ in *Gann* used the term "significant weight" to describe a medical opinion, while the ALJ here used "persuasive," should not prevent the holding of *Gann* from applying. However, he cites no authority for this assertion, and the Court is unaware of any case that has elevated an opinion described as "persuasive" and "consistent with the record" to a functionally controlling edict. Moreover, the ALJ prefaced that he would not attribute any particular weight to the medical opinion evidence,

5

making quite clear that he did not give the opinions of Dr. Shields and Dr. Sullivan heightened weight in his decision.

In considering medical opinion evidence, the ALJ first distinguished between sources he found to be supported by the record as a whole—and thus persuasive—and those that he found to be not so supported and therefore not persuasive. Specifically, the ALJ described the opinions of three medical professionals—Dr. Shields, Dr. Sullivan, and Dr. Barron—as persuasive; and the opinions of four others—Gregory Salmi, M.D., Charles Grant, M.D., Reuben Lubka, M.D., and Dakota Baker, M.A., L.P.C.C.—as unpersuasive. [R. 21–23]. From there, the ALJ considered the persuasive evidence as a whole to determine Mr. P.'s RFC—balancing these opinions and their minor differences with the rest of the record, without affording more weight to any one source.

In sum, the argument that the ALJ was required under *Gann v. Berryhill* to include a limitation on "detailed tasks" in Mr. P.'s RFC or an explanation for the omission of such a limitation, simply because Dr. Shields and Dr. Sullivan opined that some of Mr. P.'s abilities would not extend to "complex or detailed" instructions and tasks, is not supported in law.[1] Instead, the ALJ was required to adopt an RFC based upon the record as a whole, an obligation that was met in this case. *See Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (stating that "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC;" and that the ALJ does so on the basis of "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations" (quotation omitted)); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) ("A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." (quotation omitted)).

The Court finds that ALJ Doyle provided sufficient explanation for his findings as to the persuasiveness of the evidence, and that the RFC is supported by substantial evidence the record *as a whole*.

### B.     Substance Abuse—Social Security Ruling 13-2p

Mr. P. next argues that the ALJ failed to follow the procedural requirements of Social Security Ruling 13-2p. Specifically, he asserts that SSR 13-2p "was implicated in this case . . . as the record shows recurring heroin use before Mr. P. began methadone treatment and

---

[1] Because the parties' subsequent arguments—those concerning whether a "detailed tasks" limitation precludes the ability to work jobs with DOT-assigned reasoning level of two—are premised on the omission of such a limitation being erroneous, the Court will not address those arguments.

counseling in earnest," and argues that it was error for the ALJ to "not evaluate Mr. P.'s significant substance abuse issues at Steps Two or Three of the sequential evaluation process." This argument confuses the applicable law.

As the Ruling states at the outset, SSR 13-2p is a policy interpretation intended to "explain[] our policies for how we consider whether 'drug addiction and alcoholism' (DAA) is a contributing factor material to our determination of disability in disability claims." 2013 WL 621536, at *1. The Ruling goes on to provide,

> Sections 223(d)(2)(C) and 1614(a)(3)(J) of the Social Security Act (Act) provide that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." When we adjudicate a claim . . . *and* we determine that a claimant is disabled considering all of the claimant's medically determinable impairments (MDIs), we must *then* determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol; that is, we will determine whether DAA is "material" to the finding that the claimant is disabled.

*Id.* at *2 (emphasis added). The ruling delineates a process for applying the sections of the Social Security Act that preclude a finding of disability where substance addiction would be a material factor to that finding, and it makes clear that that process applies only after the Commissioner finds that a claimant is disabled. *Nelson v. Saul*, 413 F. Supp. 3d 886, 910 (D. Mo. 2019) ("The process [described by SSR 13-2p] requires that *when* a claimant has at least one other medically determinable impairment that could be disabling by itself, the ALJ must determine whether the other impairment might improve to the point of nondisability if the claimant were to stop using drugs or alcohol." (emphasis added)); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)(stating, in reference to 20 C.F.R. § 404.1535(a), that "[t]he plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled"). Here, the ALJ found that Mr. P. was not disabled, so SSR 13-2p—which explains a second step prior to determining that someone is eligible for benefits—was never triggered. *Barrett v. Berryhill*, 904 F.3d 1029, 1032 (9th Cir. 2018) (citing SSR 13-2p for the proposition that "[a]n ALJ must determine if a claimant's drug or alcohol addiction is material to his or her disability only if the ALJ first finds that the claimant is disabled"); *Cassandra v. Saul*, 18-cv-1892 (ECW), 2019 WL 4645421, at *18 (D. Minn. Sept. 24, 2019) (same). Mr. P.'s arguments on this issue are without merit.

### C.     Development of the Record

Finally, Mr. P. argues that the ALJ erred by not further developing the record with respect to Mr. P.'s diabetes-related limitations. He asserts that "no treating or examining

7

source provided opinions concerning Mr. [P.'s] diabetes-related limitations beyond the vague opinions from Dr. Lubka," and argues that therefore "[t]he ALJ should have obtained a treating or examining source, or at least, a medical expert, to provide some indication as to how Mr. P.'s diabetes would be expected to impact his performance of the various exertional tasks required." [Pl. Mem., ECF No. 18 at 26]. Finally, he contends that because the ALJ "rejected the nonexamining agency medical consultants' opinions, the ALJ's physical RFC findings are lacking in any medical opinion support, examining or nonexamining."

The Court disagrees with Mr. P.'s characterization of the record. ALJ Doyle considered the opinions of four medical professionals on the issue of Mr. P.'s diabetes. While it is true that the ALJ concluded that he found each of them "unpersuasive," this does not mean that his conclusions were not supported by substantial evidence.

The ALJ found the opinions of Dr. Lubka and Mr. Baker to be unpersuasive, despite the fact that they were treating providers, in part because their opinions were conclusory and lacked function-by-function limitations.[2] [R. 3303–15]; *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (a treating physician's opinion that is conclusory, cites no medical evidence, and provides little or no elaboration, is properly discounted). The ALJ also found these opinions unsupported by the record and unpersuasive because they failed to make any mention of Mr. P.'s repeated failures to follow his prescribed diabetes treatment, despite acknowledging repeated hospital admissions for diabetes mellitus. [R. 23].

In contrast, while the ALJ also found the opinions of agency medical consultants Dr. Salmi and Dr. Grant inconsistent with the record and thus unpersuasive, this was because the other evidence, including the extensive medical records and Mr. P.'s own subjective complaints, supported *more* exertional, postural, and environmental limitations than their opinions recommended.[3] There is no indication in the ALJ's order or in this record that he "rejected" any medical opinion evidence—only that he considered these conclusion to be inconsistent with other evidence in the record and thus found those conclusions

---

[2] Dr. Lubka offered that Mr. P. "could not be expected to be a solid employee for any company I can foresee now or for the future," and "[t]here are absolutely no encouraging signs of things taking a turn for the better, whatsoever. Now with this patient's family entirely in disarray, it is unlikely they can provide any long term care for this patient, and I think the patient should be considered for social security disability." [R. 3321]. Mr. Baker, likewise, offered his opinion that supplemental security income was designed to assist individuals like Mr. P. [R. 3331].

[3] Drs. Salmi and Grant noted Mr. P.'s diabetes, irregular dieting habits, and substance abuse, but concluded that his gait, motor strength, and arm issues presented minor limitations and that "no more than a medium RFC can be afforded." [R. 85, 149].

unpersuasive. The ALJ need not repeat verbatim the opinions of medical professionals, examining or otherwise, for an RFC to be supported by substantial evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (stating that while "an ALJ's assessment of [the RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace . . . there is no requirement than an RFC finding be supported by a specific medical opinion"). Here, the ALJ repeatedly discussed the physical limitations posed by Mr. P.'s diabetes and the evidentiary support for the same. In this case, it cannot be said that the RFC specifically, or the ALJ's opinion generally, are not supported by substantial evidence in the record as a whole. ALJ Doyle's determination fell well within the "zone of choice" suggested by the evidence, and his decision must therefore be affirmed. *Bradley,* 528 F.3d at 1115.

### IV. Order

**IT IS HEREBY ORDERED THAT**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(ECF No. 20)** is **GRANTED**; and

3. This matter is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly.**

Date: February 2, 2021

                                               *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States Magistrate Judge